# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
May 4, 2016 Session

## GEORGE THOMAS KIRBY v. MABLE DEAN KIRBY

**Appeal from the Circuit Court for Montgomery County**
**No. MC CC CV DN 14-2551      Ross H. Hicks, Judge**

—————————

**No. M2015-01408-COA-R3-CV – Filed July 25, 2016**

—————————

In this divorce action, the trial court fashioned a division of the parties' marital property without determining values for several items of personal property and amounts of certain debt and without reference to the statutory factors. The trial court also awarded the wife alimony *in futuro* in the amount of $1,500 per month and attorney's fees in the amount of $5,000. The husband has appealed. Due to the lack of factual findings regarding the basis for the trial court's marital property distribution, we vacate that portion of the judgment and remand the issue to the trial court for entry of appropriate findings of fact and conclusions of law. Because we have vacated the trial court's distribution of marital property, we must also vacate and remand the issues of alimony and attorney's fees for reconsideration by the trial court once an equitable distribution of marital property has been fashioned. The wife's claim seeking attorney's fees incurred on appeal is denied.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Vacated; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J, M.S., and ANDY D. BENNETT, J., joined.

Tarsila Crawford and James Widrig, Nashville, Tennessee, for the appellant, George Thomas Kirby.

Michael K. Williamson and Tracy P. Knight, Clarksville, Tennessee, for the appellee, Mable Dean Kirby.

## OPINION

### I. Factual and Procedural Background

The plaintiff, George Thomas Kirby ("Husband"), filed a complaint for divorce against the defendant, Mable Dean Kirby ("Wife"), in the Montgomery County Circuit Court on December 17, 2014. The parties were married on May 22, 1981, and continued to reside together at the time of the complaint's filing. The parties' only child had reached the age of majority before the divorce action was filed. In the complaint, Husband alleged grounds of irreconcilable differences or, in the alternative, that Wife was guilty of inappropriate marital conduct. *See* Tenn. Code Ann. § 36-4-101 (2014).

Wife filed an answer and counter-complaint, asserting that she had filed an action for an order of protection against Husband because he had physically assaulted her. Both parties requested that the trial court equitably divide their marital property and debts. Wife sought an award of alimony. The parties attended mediation on March 20, 2015, reaching an agreement as to the disposition of the marital residence and certain items of personal property and debt. The parties were unable to agree regarding the disposition of their retirement accounts and Wife's claim for alimony, reserving those issues for determination by the court.

The trial court conducted a hearing on the merits on April 6, 2015, during which the parties were the only witnesses. Husband, age sixty-three, testified that he served in the military for a period of twenty years, with 134 months or 56% of his service occurring during the parties' marriage. At the time of trial, Husband was receiving military retirement benefits in the gross amount of $1,521 per month. Husband maintained full-time employment, earning an average of $5,138 gross monthly pay in 2015. As Husband explained, he had been working a substantial amount of overtime in 2015 and was unsure how long this overtime would continue. Husband also acknowledged, however, that he had recently received an income increase that was not reflected on the payroll stub he presented to the court. Husband owned a 401(k) fund valued at $256 through his current employer. Husband also received Ford Motor Company pension benefits of $405 per month from his previous employer and Social Security benefits of $1,437 per month.

Husband presented a statement detailing his monthly income and expenses, demonstrating monthly expenses of $4,218. Husband acknowledged, however, that this amount included an $1,848 monthly mortgage payment concerning the marital residence, which would be reduced to $1,391 in two months. When the marital residence was sold, the obligation would terminate. According to Husband, although the parties had agreed to sell the marital residence and split any sale proceeds equally, Husband expected the

proceeds to be minimal due to a lack of equity in the home. Husband indicated that he planned to rent a home thereafter, which he expected to cost less than $1,300 per month.

Despite having been diagnosed with prostate cancer in 2013, Husband reported that he was in good physical and mental health. Although he testified that he had not been physically intimate with Wife for quite some time, Husband acknowledged that he had been filling a monthly prescription for Cialis at a cost of $44. Husband claimed that he was obtaining the drug for a friend. Husband also admitted having spent $599 at the Tennessee Men's Clinic because he desired to be sexually active. In addition, Husband made a recent purchase of women's jewelry not given to Wife and stayed in a motel overnight with a female friend.

Wife testified that she was sixty-six years old and had retired from her full-time employment in 2013 at the age of sixty-two. Wife's only income at the time of trial was her monthly Social Security benefit in the net amount of $878 per month and monthly retirement benefit from her 401(k) fund, paid at the rate of $500 per month. Wife explained that as her 401(k) had a balance of approximately $50,000, the monthly benefit amount was designed to extend until she reached age eighty-five.

Wife further testified that she recently underwent five surgeries on her arm and shoulder due to injuries she suffered when Husband physically assaulted her on two separate occasions. As Wife explained, due to her extensive arm injuries and diabetes, she was unable to maintain gainful employment and could obtain no training or education that would enable her to return to work. Wife related that until her retirement, she had worked throughout the parties' marriage while also serving as primary caregiver for the parties' son, who was forty years old at the time of trial.[1] According to Wife, Husband periodically experienced deployment during his military service spanning twelve to eighteen months at a time, during which she was solely responsible for maintaining their home and caring for their child.

Wife estimated that her monthly expenses would be approximately $3,809 after the marital residence was sold. Wife believed $1,150 per month to be the average cost of a rental home, although she acknowledged that she had found some rental properties costing only $750 per month. Wife estimated her utility bills by calculating one-half of the amount the parties were currently paying. As Wife explained, the parties enjoyed a high standard of living during the marriage, owning a nice home and expensive cars. Wife reported that she recently had to purchase a new vehicle because Husband "turned in" the vehicle she was driving without consulting her. Wife consequently incurred a

---

[1] Wife explained that the parties had been previously married, had divorced for a short period of time, and then had remarried in 1981.

monthly car payment of $364. Wife estimated that upon paying rent, her monthly expenses would exceed her income by approximately $2,500. Although Wife recognized that she was awarded a substantial share of the parties' furnishings and personalty in the parties' mediation agreement, she placed no values thereon. Wife also indicated that she owed a "significant amount" of attorney's fees at the time of trial.

Although the parties had substantially divided the marital estate during mediation, the distribution of retirement benefits and Wife's claim for alimony remained as issues for trial. On June 12, 2015, the trial court entered a memorandum opinion and order. The court determined that 134 months or 56% of Husband's military service accrued during the parties' marriage. The court further found that Wife was employed during the parties' marriage and had been the primary caregiver for the parties' son. The court also noted that Wife was currently unable to work and could not be rehabilitated. The court explained that fault for the divorce was assessed to Husband.

Concerning income, the trial court determined that Husband earned approximately $5,138 per month in addition to receiving military retirement benefits, Social Security benefits of $1,437 per month, and a Ford pension of $405 per month. By contrast, Wife only received Social Security benefits of $982 per month and a retirement benefit of $500 per month.

While the trial court determined that Husband held as separate property 44% of his military retirement benefits, valued at $566.76 per month, Wife had no separate property. The court affirmed the parties' mediated agreement, including the sale of the marital residence, finding that any proceeds from such sale would be minimal. Accordingly, the only significant asset of the marital estate was found to be that portion of Husband's military retirement accruing during the marriage.

The trial court concluded that it was appropriate to award Wife one-half of Husband's military retirement as part of an equitable division of the parties' marital property. Wife was also awarded her 401(k) account, and Husband was awarded his Ford pension as part of the division of marital property. Based upon the applicable statutory factors, the court found this to be an appropriate case for an award of alimony *in futuro* to Wife. Hence, Wife was awarded $1,500 per month as alimony *in futuro,* based primarily upon her need and Husband's ability to pay. To secure Husband's alimony obligation, the court ordered him to maintain a life insurance policy in the amount of $250,000 with Wife as beneficiary. The court also directed Husband to pay $5,000 toward Wife's attorney's fees as alimony *in solido*.

The trial court entered a final decree on July 8, 2015, incorporating its Memorandum Opinion and Order. Husband timely appealed.

## II. Issues Presented

Husband presents the following issues for our review, which we have restated slightly:

1. Whether the trial court erred by awarding to Wife one-half of Husband's military retirement benefit as part of its equitable distribution of the marital estate.

2. Whether the trial court erred by awarding to Wife $1,500 per month as alimony *in futuro*.

3. Whether the trial court erred by awarding to Wife $5,000 in attorney's fees.

Wife presents one additional issue:

4. Whether Wife should be awarded her attorney's fees incurred on appeal.

## III. Standard of Review

In a case involving the proper classification and distribution of assets incident to a divorce, our Supreme Court has elucidated the applicable standard of review as follows:

> This Court gives great weight to the decisions of the trial court in dividing marital assets and "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996). As such, when dealing with the trial court's findings of fact, we review the record de novo with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991). Consequently, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct.

5

App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)). The trial court's conclusions of law, however, are accorded no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002).

*Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007).

Further, as this Court has previously held:

Because Tennessee is a "dual property" state, a trial court must identify all of the assets possessed by the divorcing parties as either separate property or marital property before equitably dividing the marital estate. Separate property is not subject to division. In contrast, Tenn. Code Ann. § 36-4-121(c) outlines the relevant factors that a court must consider when equitably dividing the marital property without regard to fault on the part of either party. An equitable division of marital property is not necessarily an equal division, and § 36-4-121(a)(1) only requires an equitable division.

*McHugh v. McHugh*, No. E2009-01391-COA-R3-CV, 2010 WL 1526140 at *3-4 (Tenn. Ct. App. Apr. 16, 2010) (internal citations omitted). *See also Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001) (holding that appellate courts reviewing a distribution of marital property "ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence.").

Regarding alimony, our Supreme Court has "repeatedly and recently observ[ed] that trial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award." *See Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). The Court has further explained:

[A] trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard* [*v. Kinard*], 986 S.W.2d [220,] 234 [(Tenn. Ct. App. 1998)]. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an

illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. This standard does not permit an appellate court to substitute its judgment for that of the trial court, but "'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives,' and thus 'envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.'" *Henderson* [*v. SAIA, Inc.*,], 318 S.W.3d [328,] 335 [(Tenn. 2010)] (quoting *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010)). Consequently, when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision.

*Id*. at 105-06 (other internal citations omitted).

## IV. Marital Property Distribution

Husband argues that the trial court erred by awarding to Wife one-half of Husband's military retirement benefit as part of the trial court's distribution of marital property. In support of his argument, Husband asserts that the trial court made insufficient factual findings regarding the court's basis for the equitable distribution of marital property. Upon our thorough review of the trial court's findings and conclusions, we agree with Husband.

Tennessee Code Annotated § 36-4-121 (Supp. 2015) addresses the equitable division of marital property pursuant to divorce, providing in pertinent part:

(a)(1) In all actions for divorce or legal separation, the court having jurisdiction thereof may, upon request of either party, and prior to any determination as to whether it is appropriate to order the support and maintenance of one (1) party by the other, equitably divide, distribute or assign the marital property between the parties without regard to marital fault in proportions as the court deems just.

* * *

(c) In making equitable division of marital property, the court shall consider all relevant factors including:

(1) The duration of the marriage;

7

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

In the case at bar, the trial court made no specific mention of the above statutory factors when fashioning its distribution of the parties' marital property. Although the

trial court did make numerous, extensive factual findings, certain of those findings, such as fault, should only be considered with regard to an award of alimony. *See* Tenn. Code Ann. §§ 36-4-121, 36-5-121. The court did not specify which of the factual findings it applied in making its determination regarding the marital property distribution.

As this Court has previously explained with regard to the equitable distribution of marital property pursuant to divorce:

> Trial courts have wide latitude in fashioning an equitable division of marital property. <u>Their decisions must be guided by the factors in Tenn. Code Ann. § 36-4-121(c), and must be made without regard to marital fault</u>. The decision is not a mechanical one and is not rendered inequitable because it is not precisely equal, or because both parties did not receive a share of each piece of property. Appellate courts defer to the trial courts in these matters unless their decisions are inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or are not supported by the preponderance of the evidence.

*Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994) (emphasis added) (internal citations omitted). The record in this case reveals little by which this Court can determine whether the trial court properly considered the statutory factors contained in Tennessee Code Annotated § 36-4-121 or improperly considered fault when making its determination regarding an equitable distribution of the parties' marital property.

Further complicating this Court's review, the trial court failed to make factual findings regarding the values of certain marital assets and amounts of various debts. For example, the marital assets and debts that were divided through the parties' agreement in mediation were never valued by the parties or the court. Certain of those assets, such as a Pigeon Forge timeshare, various tools, lawnmowers, and furnishings, could be of significant value or of little worth. Similarly, various marital debts assumed by Husband, including a line of credit and certain credit cards, were assigned no amount. Although Husband agreed to the disposition of these assets and debts, we cannot determine whether the overall distribution of marital property, including the division of Husband's military retirement benefits, is equitable in the absence of evidence regarding the values of all marital assets and amounts of debts. *See, e.g., Morton v. Morton*, 182 S.W.3d 821, 834 (Tenn. Ct. App. 2005) (holding that this Court must determine whether the overall property distribution is equitable rather than focusing on one asset).

Moreover, Tennessee Rule of Civil Procedure 52.01 provides:

In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rules 41.02 and 65.04(6).

With reference to Rule 52.01, this Court has explained:

[T]he requirement to make findings of fact and conclusions of law is "not a mere technicality." *In re K.H.,* No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009). Instead, the requirement serves the important purpose of "facilitat[ing] appellate review and promot[ing] the just and speedy resolution of appeals." *Id.*; *White v. Moody,* 171 S.W.3d 187, 191 (Tenn. Ct. App. 2004); *Bruce v. Bruce,* 801 S.W.2d 102, 104 (Tenn. Ct. App. 1990). "Without such findings and conclusions, this court is left to wonder on what basis the court reached its ultimate decision." *In re K.H.,* 2009 WL 1362314, at *8 (quoting *In re M.E.W.* No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. Apr. 21, 2004)). Generally, the appropriate remedy when a trial court fails to make appropriate findings of fact and conclusions of law is to "vacate the trial court's judgment and remand the cause to the trial court for written findings of fact and conclusions of law," unless the trial court's decision involves only a clear legal issue or the trial court's decision is readily ascertainable. *Lake v. Haynes,* No. W2010-00294-COA-R3-CV, 2011 WL 2361563, at *1 (Tenn. Ct. App. June 9, 2011); *Burgess v. Kone, Inc.,* No. M2007-02529-COA-R3-CV, 2008 WL 2796409, at *2 (Tenn. Ct. App. July 18, 2008).

*Babcock v. Babcock*, No. E2014-01670-COA-R3-CV, 2015 WL 1059003 at *6 (Tenn. Ct. App. Mar. 9, 2015).

In this matter, the issues concerning the distribution of the parties' marital property do not involve a clear legal issue, nor is the basis for the trial court's division of the marital estate "readily ascertainable." *Id.* In the absence of sufficient findings and conclusions regarding the valuation of all property at issue and the statutory factors contained in Tennessee Code Annotated § 36-4-121, we cannot determine whether each party was awarded an equitable portion of the marital estate. Accordingly, we must

10

vacate the trial court's property distribution and remand this matter to the trial court for the entry of appropriate findings of fact and conclusions of law. *See* Tenn. R. Civ. P. 52.01.

We would be remiss if we did not also address the shortcomings in the parties' briefs with regard to Rule 7 of the Rules of the Court of Appeals of Tennessee. Rule 7 requires that briefs in domestic relations cases contain a tabulation of the parties' property and debts with values assigned by each party and the trial court, including citations to the record identifying where such information may be found. *See* Tenn. Ct. App. R. 7. Although the parties herein provided such a table, no values were assigned to many items of personal property and debts. As noted, the trial court determined no values regarding the property and debts divided by the parties in mediation. This Court has previously explained, however, that the trial court's failure to assign values to all items of property "does not prohibit [the parties] from providing this Court with the value [they] contend[] ought to be assigned and a citation to the record to support such an assertion." *Harden v. Harden*, No. M2009-01302-COA-R3-CV, 2010 WL 2612688 at *8 (Tenn. Ct. App. June 30, 2010). As this Court has explained with regard to the requirements of Rule 7:

> This Court has previously held "'where an appellant fails to comply with this rule, that appellant waives all such issues relating to the rule's requirements.'" *Slaughter v. Slaughter,* No. W2007-01488-COA-R3-CV, 2008 WL 1970491, at *2 (Tenn. Ct. App. May 8, 2008) (quoting *Stock v. Stock,* No. W2005-02634-COA-R3-CV, 2006 WL 3804420, at *5, n. 3 (Tenn. Ct. App. 2006) (quoting *Howell v. Howell,* No. W2001-01167-COA-R3-CV, 2002 WL 1905307, at *4 (Tenn. Ct. App. 2002) (citing *Bean v. Bean,* 40 S.W.3d 52 (Tenn. Ct. App. 2000)). "This Court is under no duty to search a trial court record in order to discern the valuation of the couple's property." *Slaughter,* 2008 WL 1970491 at *2 (citations omitted). This Court has previously found issues involving the valuation and division of property waived for failure to comply with Rule 7. *See, e.g., Slaughter v. Slaughter,* No. W2007-01488-COA-R3-CV, 2008 WL 1970491 (Tenn. Ct. App. May 8, 2008); *Bean v. Bean,* 40 S.W.3d 52 (Tenn. Ct. App. 2000); *Durant v. Durant,* No. M2001-00691-COA-R3-CV, 2002 WL 772923 (Tenn. Ct. App. April 30, 2002).

*Id.*

V. Alimony

Husband also posits that the trial court erred in its award of alimony *in futuro* to Wife. Husband contends that Wife failed to demonstrate that he had the ability to pay the awarded amount of $1,500 per month. Wife asserts that the evidence proved that Husband had the ability to pay based upon his monthly income from employment wages and retirement benefits.

As our Supreme Court has explained:

[A]limony in futuro, is intended to provide support on a long-term basis until the death or remarriage of the recipient. Tenn. Code Ann. § 36-5-121(f)(1). This type of alimony can be awarded where "the court finds that there is relative economic disadvantage and that rehabilitation is not feasible." *Id.* *See also Burlew* [*v. Burlew*], 40 S.W.3d [465,] 470-71 [(Tenn. 2001)]; *Riggs v. Riggs,* 250 S.W.3d 453, 456 n. 2 (Tenn. Ct. App. 2007). Alimony in futuro is appropriate when

> the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse.

Tenn. Code Ann. § 36-5-121(f)(1).

Alimony in futuro "is not, however, a guarantee that the recipient spouse will forever be able to enjoy a lifestyle equal to that of the obligor spouse." *Riggs,* 250 S.W.3d at 456 n. 2. In many instances, the parties' assets and incomes simply will not permit them to achieve the same standard of living after the divorce as they enjoyed during the marriage. *Robertson* [*v. Robertson*], 76 S.W.3d [337,] 340 [(Tenn. 2002)]. While enabling the spouse with less income "to maintain the pre-divorce lifestyle is a laudable goal," the reality is that "[t]wo persons living separately incur more expenses than two persons living together." *Kinard,* 986 S.W.2d at 234. "Thus, in most divorce cases it is unlikely that both parties will be able to maintain their pre-divorce lifestyle . . . ." *Id.* It is not surprising, therefore, that "[t]he prior concept of alimony as lifelong support enabling the disadvantaged spouse to maintain the standard of living established during the marriage has been superseded by the legislature's establishment of a preference for rehabilitative alimony." *Robertson,* 76 S.W.3d at 340.

*Gonsewski*, 350 S.W.3d at 107-08.

In determining whether to award spousal support and the type, amount, length, and manner of payment, the trial court should consider several statutory factors:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

13

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121 (2014).

In this case, the trial court expressly found that statutory factors one, three, four, five, seven, eight, nine, ten, eleven, and twelve militated in favor of an award of alimony *in futuro* to Wife. *See id.* Based on our review of the record, the trial court's determination that Wife was due an award of alimony is not contrary to the preponderance of the evidence. In light of our vacation of the trial court's distribution of marital property, however, the court should reconsider the award of alimony as well. *See* Tenn. Code Ann. § 36-4-121(a)(1) (providing that a trial court may award alimony only after the court has equitably divided the parties' marital property); *see, e.g., Flannary v. Flannary*, 121 S.W.3d 647, 651 (Tenn. 2003). We therefore remand the alimony issue to the trial court for further consideration once an equitable property distribution has been fashioned.

Husband also takes issue with the trial court's decision to award Wife $5,000 in attorney's fees in this matter. As our Supreme Court has explained, "[i]t is well-settled that an award of attorney's fees in a divorce case constitutes alimony in solido." *Gonsewski*, 350 S.W.3d at 113. Ergo, we must also remand the issue of attorney's fees to the trial court for reconsideration due to the reasons previously stated.

## VI.  Attorney's Fees on Appeal

Finally, Wife seeks an award of attorney's fees incurred in defending this appeal, which she characterizes as "frivolous or taken for delay." Having vacated a portion of the trial court's judgment, however, we do not find this appeal to be frivolous. *See Young v. Barrow*, 130 S.W.3d 59, 67 (Tenn. Ct. App. 2003) ("A frivolous appeal is one that is devoid of merit . . . or one that has no reasonable chance of succeeding."). Accordingly, we deny Wife's claim for fees on appeal.

## VII.  Conclusion

For the foregoing reasons, we vacate the trial court's distribution of marital property and remand this matter to the trial court for the entry of appropriate findings of fact and conclusions of law with regard to the parties' property and the equitable distribution thereof. We also vacate and remand the trial court's award of alimony and attorney's fees for reconsideration following the trial court's equitable distribution of marital property. Wife's request for an award of attorney's fees on appeal is denied.

Costs on appeal are assessed one-half to the appellant, George Thomas Kirby, and one-half to the appellee, Mable Dean Kirby.

_____
THOMAS R. FRIERSON, II, JUDGE